WELLENHOFFER v. NEW YORK, L. E. & W R. Co.

(Supreme Court, General Term, Fifth Department.   January 18, 1893.)

RAILROAD COMPANY—ACCIDENT AT CROSSING.

 Plaintiff's intestate was killed while driving over defendant railroad's cross-ing.   Two years prior to the accident, defendant had placed at such crossing an automatic bell, to give warning of approaching trains.   After a year's trial it was abandoned as a failure, but was allowed to remain at the crossing. From the time the bell was placed at the crossing, plaintiff's intestate, in the course of his business, met the trains at such crossing daily.   *Held,* that he must be assumed to have known that the presence of the bell indicated noth-ing, and, as regards him, the failure of the company to remove the bell was not negligence.

Appeal from circuit court, Cattaraugus county.

Action by Theresa Wellenhoffer, as administratrix of the estate of Thomas Wellenhoffer, deceased, against the New York, Lake Erie & Western Railroad Company, to recover for the alleged negligent killing of her intestate.   From a judgment for plaintiff, and an order overruling a new trial, defendant appeals.   Reversed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

James H. Stevens, for appellant.
T. H. Dowd, for respondent.

LEWIS, J.   This action was brought by the plaintiff, as administra-trix of the estate of Thomas Wellenhoffer, deceased, to recover the dam-ages sustained by his next of kin by his death, caused by the alleged negligence of the defendant.   Wildwood avenue, in the village of Sala-manca, runs in an easterly and westerly direction, and crosses the de-fendant's railroad tracks at grade at an angle of about 45 degrees.   The deceased, on the morning of the accident, was riding on Wildwood avenue, in a sleigh drawn by one horse, in an easterly direction, and, as he at-tempted to cross the track of the defendant's road, an engine drawing an express train known as "No. 13," at a rapid rate of speed, in a westerly direction, struck the sleigh in which the deceased was riding, causing his death.   Where Wildwood avenue crosses the railroad is in the set-tled part of the village of Salamanca, and is much frequented by teams. There was evidence tending to show that the train was running at a high rate of speed as it crossed the avenue, from 32 to 40 miles an hour. There was evidence tending to show that the bell was not rung as the train approached the crossing, nor the whistle blown, until the train was

close upon the deceased.    All this evidence was sharply controverted by the defendant's witnesses, but an examination of the evidence leads us to the conclusion that the negligence of the defendant was a question for the determination of the jury.    There is a sharp ascent in Wildwood avenue, just westerly of the railroad crossing.    East of the avenue, on the southerly side of the railroad, there is an embankment which obstructs the view of a traveler approaching the railroad on the avenue. There is also a board fence on the embankment, which also tends to obstruct the view.    There was much conflict in the evidence as to the distance on the avenue westerly of the railroad crossing that an approaching train from the east could be seen by a traveler.    The plaintiff's evidence tended to show that a train coming from the east could not be seen by a traveler but a few hundred feet east of the crossing, until his horse was close upon the southern track of the railroad.    The defendant's evidence, based upon actual surveys and observations, tended to show that for the entire distance of 60 feet on the avenue westerly of the crossing, the train in question was plainly visible to the deceased had he looked in the direction from which it was approaching.    Plaintiff's evidence tended to show that when the deceased arrived at a point beyond the embankment he did look in both directions along the railroad track, and apparently failed to see the train until it was so close upon him that he was not able to avoid the collision.    The angle at which the avenue and railroad cross at this point brought the deceased's face, as he approached the crossing, towards the approaching train.    We also think that under the evidence the question of the negligence of the deceased was for the determination of the jury.    The weight of the evidence, however, upon both of the questions litigated, was, we think, with the defendant, and the jury might well have found in its favor.    But, as is not uncommon in this class of actions, the verdict was for the plaintiff.

The serious question in the case arises upon the exception to the charge to the jury.    If errors occurred on the trial, which probably affected the verdict, a new trial should be granted.    About two years prior to the accident, the defendant caused to be erected upon the northerly side of the railroad tracks at this crossing an appliance called upon the trial an "electric" or "automatic" bell, which was composed of a pole set in the ground, upon which a bell was placed.    At the distance of about 1,700 feet easterly and westerly from the bell and pole annunciators were placed in connection with the rails of the track, and so connected by wires with the bell that, as the wheels of the engine and the cars came in contact with the annunciators, they would cause the bell to ring.    This apparatus was placed at this crossing as an experiment.    The company made efforts to make it work for about a year.    It proved a failure, on account of its liability to get out of order.    A year or more before the accident, its use was abandoned, and for all that time it had not worked and had ceased to be used.    The bell was covered by a screen, which had become so bent that it was apparent to any one looking at it that it was out of use.    The post and bell had, however, been allowed to remain at the crossing.    These facts were fully established by uncontradicted evidence. The deceased had been engaged, during all the time the electrical bell

had been at the crossing, in delivering beer at saloons in the village, and collecting bills. Train 13 passed this crossing daily, and the deceased's business called him to this crossing to meet this train from day to day. There was an absence of any positive evidence that the deceased ever saw this bell, or knew of its purpose; but we must assume, from the fact that he was there daily for so long a time, that he knew of the bell and of its purpose. As the apparatus had been out of use for a year or more before the accident, and as the deceased had been there daily when this train passed this crossing, it is quite as clear and certain that he must have observed and known that it was out of order, and that its use had been abandoned. The record shows that he was accustomed to stop at a saloon close by the crossing, almost daily, to deliver beer or collect bills. The evidence was as convincing that he knew that the apparatus was out of use, and did not indicate the approach of a train, as that he knew it was at the crossing. The jury was not at liberty to conjecture or guess that he could have been ignorant of the condition of the bell. The court, in its charge to the jury, commented upon the electric bell apparatus, and said:

"The evidence on the other side is that it was an experiment; that it was tried temporarily at this point and some others, hoping that it would prove a success, and it proved an absolute failure; and that. instead of being a faithful indication of the approach of the train, it was sometimes an embarrassment, and had to be abandoned. The defendant's company, however, has not explained—perhaps it was not necessary; it is for you to judge—they have not explained why, after it had ascertained that this electric bell was a failure, they permitted the apparatus and all the indications of the bell to remain there without being taken down."

The defendant's counsel requested the court to charge the jury that no negligence on the part of the defendant can be based on account of the automatic bell which the evidence discloses had been placed at the crossing in question.

"The Court: I have charged you upon that question, gentlemen, and I do not think it is proper to change the charge in that regard. I have said that it was a question for you to determine. I will say it now, that it is a question for you to determine,—the company having constructed this bell and this apparatus,— whether they should not be kept in repair. and whether not keeping it in repair, under the circumstances. was not negligence that may have contributed to this result. So I decline the request."

Defendant's counsel excepted to the refusal to charge as requested, and to the remarks of the court in relation thereto. Had the company assumed to maintain this automatic bell for the purpose of notifying travelers of the approach of a train, and then had neglected to keep it in repair, so that at the time of this accident it failed to ring, it obviously would have been a fair question to present to the jury, tending to show negligence on the part of the defendant. But we do not see how any negligence could be attributed to the defendant for failing to remove the bell when it ceased to give notice of the approach of the train, or for failing to keep it in repair. The defendant was at liberty to put the bell at the crossing, and it was at liberty to abandon its use. Allowing it to remain there was not evidence of negligence as to any traveler who was fully aware that its presence indicated nothing. The questions of the defendant's negligence and of the plaintiff's freedom from negligence.

under the evidence, giving to it the most favorable construction in favor of the plaintiff, were very close questions of fact. The question as to the failure of the company to keep the bell in repair became, under the charge of the court, an important question, and is altogether probable had some weight in leading the minds of the jury to the conclusion that the defendant was guilty of negligence. We think the submission of this question to the jury was error which entitles the defendant to a new trial. The judgment and order appealed from should be reversed, and a new trial granted, with costs to abide the event. All concur.